ORDERED.

Dated: July 10, 2015

Jerry A. Funk
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

BARBARA AMBER HOWE,

Case No.:3:05-bk-9517-JAF

Chapter 7

Debtor.
_____/

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case came before the Court upon Debtor's Motion to Convert Case to Chapter 13 (Doc. 97) and Trustee's Motion for Sanctions (Doc. 109). The Court conducted a final evidentiary hearing on the matters on May 12, 2015, and elected to take the matters under advisement. Upon the evidence and the applicable law, the Court makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

On September 6, 2005, Debtor filed a Chapter 7 bankruptcy petition. (Tr.'s Ex. 1). In response to Item 20 on Schedule B of her bankruptcy petition, which requires a debtor to list "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims

1

of the debtor, and rights to setoff claims" and also requires a debtor to list the estimated value of each, Debtor indicated that she had a pending worker's compensation claim, of unknown value, against Wal-Mart. (Tr.'s Ex. 2). Debtor did not list any other claims. On that same day, Doreen Abbott was appointed as the Chapter 7 Trustee (the "Trustee"). On October 25, 2005, the Trustee conducted a 341 meeting of creditors. At that meeting, Debtor testified that she received social security disability payments as a result of health conditions caused by ruptured silicone breast implants. Debtor testified that she had not initiated a lawsuit as a result of the injury. In response to the Trustee's inquiry as to whether Debtor was part of the Dow Corning class action lawsuits, Debtor testified she was "part of the MDL settlement … that half of it" and had received a $250,000.00 settlement in 1997. When asked whether anybody owed her any money in any sense of the word, Debtor testified no.

On January 10, 2006, Debtor received a discharge. On February 8, 2007, the Trustee filed a Report of No Distribution indicating that there was no property available for distribution from the estate over and above that exempted by law. On February 28, 2007, the Court closed the case.

On May 13, 2013, Debtor filed a Motion to Reopen Chapter 7 Case. Therein, Debtor stated that she was the plaintiff in a case then pending in the United States District Court for the Eastern District of Michigan (the "Michigan Case") against DCC Litigation Facility, Inc. ("DCC") seeking damages for injuries resulting from a breast implant. Debtor also indicated that DCC had moved for summary judgment in the Michigan Case on the basis of judicial estoppel, asserting that Debtor's claim was barred because she failed to list it as an asset on her bankruptcy schedules. Accordingly, Debtor sought to have the Court reopen her bankruptcy case to determine whether the claim (the "Personal Injury Claim") was an asset of her bankruptcy estate

and subject to administration by the Trustee. The Court initially denied the Motion to Reopen but subsequently granted Debtor's Motion for Reconsideration and reopened the case.

On December 11, 2013, the Trustee filed a Notice of Intent to Compromise Claims with [DCC] (the "Notice of Intent to Compromise") by which the Trustee agreed to compromise the Personal Injury Claim in exchange for a payment that would provide "a distribution of at least 70% of the amount of timely filed general nonpriority unsecured claims" in Debtor's case. Debtor filed an Objection and Supplemental Objection to the Notice of Intent to Compromise. On March 27, 2014, the Court conducted an evidentiary hearing on the Notice of Intent to Compromise, the Objection, and the Supplemental Objection. At that hearing the Court orally approved a compromise between the Trustee and DCC in the amount of $12,257.81. That amount included payment of the Trustee's statutory fees in the amount of $1,975.78, payment of the Trustee's expenses of $127.41, payment of the Trustee's attorney's fees in the amount of $3,500.00, payment of the Trustee's attorney's expenses of $94.21, and a payment of $6,550.41 to Debtor's unsecured creditors (Doc. 104).

On April 2, 2014, the Court entered Order on Debtor's (I) Objection to Trustee's Notice of Intent to Compromise Claims with DCC Litigation Facility, Inc. (Doc. 41) and (II) Supplement to Objection to Trustee's Notice of Intent to Compromise Claims with DCC Litigation Facility, Inc. (Doc. 42) (the "April 2, 2014 Order"). The April 2, 2014 Order conditionally sustained Debtor's Objection and Supplemental Objection to the Notice of Intent to Compromise provided that Debtor paid $12,257.81 in certified funds to the Trustee within thirty days of the date of the Order. The April 2, 2014 Order also provided that if the payment was not timely received by the Trustee, the Objection and Supplemental Objection would be deemed overruled and the Trustee permitted to immediately close the transaction set forth in the

compromise with DCC. The April 2, 2014 Order provided that if Debtor timely made the payment to the Trustee she would "have and own all claims, rights, and remedies" in the Michigan Case.

Debtor failed to make the payment required by the April 2, 2014 Order and the Trustee consummated the transaction with the DCC. On May 29, 2014, Debtor filed a Motion for Reconsideration of the April 2, 2014 Order (Doc. 67) which the Court scheduled for hearing on July 11, 2014. Debtor did not appear at the July 11, 2014 hearing. On August 20, 2014, the Court conducted another hearing on the Motion for Reconsideration. Debtor failed to appear at that hearing as well. On August 21, 2014, the Court entered an Order Denying the Motion for Reconsideration of the April 2, 2014 Order (Doc. 87). The April 2, 2014 Order is a final-non-appealable order.

On February 18, 2015, Debtor filed Motion to Convert Case to Chapter 13. On February 19, 2015, the Trustee filed a response objecting to the Motion to Convert. On April 1, 2015, the Trustee filed the Motion for Sanctions. On May 12, 2015, the Court conducted an evidentiary hearing on the Motion to Convert and the Motion for Sanctions. At the hearing the Trustee testified that as a result of Debtor's testimony at the October 25, 2005 meeting of creditors that nobody owed her any money in any sense of the word, the Trustee did not believe that there was any ongoing possible litigation.

## Conclusions of Law

While Debtor titled the motion which is before the Court as a Motion to Convert Case to Chapter 13, Debtor also seeks yet again to have the Court set aside the April 2, 2014 Order. This time, Debtor seeks to have the Court set aside the April 2, 2014 Order pursuant to Federal

4

Rule of Civil Procedure 60(b)(3)[1], which provides for relief from a judgment for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party[.]" Debtor asserts that the Trustee and the Trustee's counsel engaged in "make work" efforts to "derive self-serving and immediate income from unnecessary work subsequent to Debtor offering from the beginning to pay 100% of creditor claims …. Hence, [the Trustee's counsel]'s and the Trustee's work after this early time was unnecessary except to make work in order for them to gain unwarranted personal immediate income via contrived means." Debtor presented no evidence of any fraud, misrepresentation, or misconduct by the Trustee or the Trustee's counsel. Accordingly, the Court will not set aside the April 2, 2014 Order on that basis.

Debtor also seeks to have the April 2, 2014 Order set aside on the basis that the Trustee constructively abandoned the Personal Injury Claim. Debtor points out that she gave enough "hints" to the Trustee at the 341 meeting of creditors concerning the Personal Injury Claim to put the Trustee on notice as to the existence of a claim and to cause the Trustee to inquire further. Initially, the Court points out that Debtor is precluded from raising this argument at this late stage of the proceeding. As the Court noted, the April 2, 2014 Order is a final, non-appealable order. Notwithstanding that, the Court would have rejected the argument even if it had been timely raised. As the Court noted, Debtor testified at the 341 meeting of creditors that nobody owed her any money in any sense of the word. The Court makes no finding as to whether and, if so, the extent to which, providing "hints" at a 341 meeting is sufficient to put parties on notice of a potential asset. However, such a finding is unnecessary here, where Debtor's testimony was an

---

[1] With certain exceptions not applicable here, Rule 60 applies to bankruptcy cases pursuant to Federal Rule of Bankruptcy Procedure 9024. A motion under Rule 60(b)(3) must be made no more than a year after the entry of the judgment or order sought to be set aside. Debtor's request under Rule 60(b)(3) was made within a year after the entry of the April 2, 2014 Order and is therefore timely.

unequivocal denial as to the existence of any additional assets. The Court finds that the Trustee did not and could not have known of the Personal Injury Claim's existence as a result of Debtor's answers to the Trustee's questions at the 341 meeting. Accordingly, Debtor's argument as to abandonment would fail even if it had been timely raised.

Finally, Debtor argues that DCC forfeited its claim due to laches. While it is unclear as to what Debtor is referring, to the extent Debtor seeks to set aside the April 2, 2014 Order on that basis, the Court will deny the request.

The Court turns to the Motion to Convert. Section 706(a) of the Bankruptcy Code provides that a "debtor may convert a case under this chapter to a case under chapter … 13 of this title at any time, if the case has not been converted under section … 1307 of this title." 11 U.S.C. § 706. A debtor's right to convert a case from Chapter 13 to Chapter 7 is not absolute; there is a bad faith exception to the right created by § 706(a). Marrama v. Citizens Bank of Mass., 549 U.S. 365, 370-371 (2007). While the Supreme Court did not precisely articulate what conduct qualifies as "bad faith" sufficient to deny conversion of a case from Chapter 7 to Chapter 13, it noted that such conduct must be "atypical" and the case an "extraordinary" one. Id. at 375 n.11. In determining whether a debtor engaged in bad faith, courts look at the totality of the circumstances because such an approach provides the "'flexibility to consider the specific circumstances of each case.'" In re Gedda, 2015 WL 1396605 at * 3 (Bankr. M.D. Fla. Mar. 24, 2015) (quoting In re FMO Assocs. II, LLC, 402 B.R. 546, 552 (Bankr. E.D.N.Y. 2009)). Courts look to various factors including whether a debtor has only one asset. Id. at *3-4. Additionally, courts consider "'the impact on the debtor of denying conversion weighed against the prejudice to creditors caused by allowing conversion; [and] the effect of conversion on the efficient administration of the bankruptcy estate.'" Id. at *4 (quoting In re Shankman, 382 B.R. 591, 597

(Bankr. E.D.N.Y. 2008)). A debtor's post-discharge request to convert a case from Chapter 7 to another chapter is in and of itself suspicious and weighs heavily against conversion. Id.

Debtor's sole purpose in seeking to convert this case to Chapter 13 is to obtain control of the Personal Injury Claim, the estate's sole asset. The April 2, 2014 Order, entered after an evidentiary hearing at which Debtor appeared and offered testimonial and documentary evidence, afforded Debtor an opportunity to purchase the Personal Injury Claim. Debtor failed to avail herself of that opportunity. Additionally, Debtor did not appeal the April 2, 2014 Order. Permitting Debtor to convert the case at this point would only further delay a distribution to the unsecured creditors. Debtor's attempt to convert this case to Chapter 13 more than 9 years after she received a discharge is nothing more than a belated attempt to escape the consequences of the April 2, 2014 Order and constitutes bad faith. This case is the extraordinary case to which Marrama refers. Accordingly, the Court will deny the Motion to Convert to Chapter 13.

The Court turns to the Trustee's Motion for Sanctions. The Trustee asserts that there is no factual or legal basis to support the Motion to Convert and it is therefore meritless. The Trustee seeks sanctions pursuant to Bankruptcy Rule 9011. "Sanctions under Bankruptcy Rule 9011 are warranted when (1) the papers are frivolous, legally unreasonable, or without factual foundation, or (2) the pleading is filed in bad faith or for an improper purpose." Glatter v. Mroz (In re Mroz), 65 F.3d 1567, 1572 (11th Cir. 1995). The purpose of Rule 9011 is "to deter unnecessary filings, prevent assertion of frivolous pleadings, and require good faith filings." In re Turner, 519 B.R. 354, 358-359 (Bankr. S.D. Fla. 2014). "'A finding of bad faith is warranted where a [party] knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order.'" Barnes v. Dalton, 158

F.3d 1212, 1214 (11th Cir. 1998) (quoting Primus Automotive Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 649 (9th Cir. 1997)). As the Court previously explained, the Motion to Convert was filed in bad faith.

If a court determines that Rule 9011 has been violated, sanctions, may be imposed pursuant to subdivision (c) of the Rule which provides that "the court may, subject to the conditions stated below, impose an appropriate sanction upon the … part[y] that [has] violated the rule." Subdivision (c)(2) provides that such sanction may include "directives of a nonmonetary nature … or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." While the Court will not impose monetary sanctions at this point, the Court finds it appropriate to enjoin Debtor from filing any further papers which further delay the administration of this case. The filing of any such paper will result in the imposition of monetary sanctions. The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.